# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

ERSULTAN ERMEKOV,

    Petitioner,

vs.

MARKWAYE MULLIN,* et al.,

    Respondents.

No.  C26-41-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

## I.     INTRODUCTION

This case is before me on petitioner Ersultan Ermekov's petition (Doc. 1) for habeas corpus under 28 U.C.S. § 2241.  Ermekov is an alien who was detained and released on order of recognizance.  *See* Doc. 1.  Respondents (collectively, the Government)[1] have now re-detained him.  Ermekov claims his re-detention violates his due process rights.  In an initial review order (Doc. 3), I directed the Government to respond to the petition, which it has (Doc. 7).  Ermekov has replied (Doc. 16).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.    BACKGROUND

The facts and procedural background are not disputed.  Ermekov is a citizen and national of Kyrgyzstan who initially entered the United States on or about June 20, 2023.

---

* Markwayne Mullin was confirmed as Secretary of the Department of Homeland Security on March 23, 2026, and is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[1] Though the Government's response was filed only on behalf of the federal respondents and not the state employees (Doc. 7 at 1 n.1), this order will apply to all respondents with equal force.

Doc. 10-1 at 3.  On June 21, 2023, he was served with a Notice to Appear for removal proceedings and released on order of recognizance.  *Id*.; Doc. 10-2.

On November 19, 2025, Department of Homeland Security (DHS) officials encountered Ermekov at a weigh station in Dallas County, Iowa.  Doc. 10-1.  DHS ran immigration checks and determined that he was unlawfully in the United States.  Ermekov was arrested and detained in the Hardin County Jail (Doc. 1 at 2).  Ermekov subsequently submitted an amended application for asylum and withholding of removal and motion for bond and custody redetermination, which was denied.  *See* Doc. 1-1.  He also filed the instant habeas petition (Doc. 1).

### III.    *STANDARD OF REVIEW*

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  To receive relief, a petitioner must prove by a preponderance of the evidence that his detention is unlawful.  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

### IV.    *ANALYSIS*

The Government justifies Ermekov's civil detention without a bond hearing based on the mandatory detention provision of 8 U.S.C. § 1225(b)(2).  The Eighth Circuit has found that similarly situated petitioners qualify under that provision.  *See Avila v. Bondi*, ___ F.4th ___, 2026 WL 819258 (8th Cir. Mar. 25, 2026).  As Ermekov does not dispute *Avila*'s relevance, I will treat § 1225(b)(2) as being the applicable statute governing Ermekov's detention.  While § 1225(b)(2) provides no statutory right to a bond hearing, *see Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), *Avila* does not foreclose a petitioner from raising an as-applied due process challenge.  *Avila*, 2026 WL 819258 at *8 & n.8 (Erickson, J., dissenting).  That is the challenge Ermekov asserts.

### A.    *Process Due to Those Detained Under § 1225(b)(2)*

The fact that an alien is facing removal proceedings does not mean the Government may deprive the alien of due process of law.  *Yamataya v. Fisher* (The Japanese Immigration Case), 189 U.S. 86, 100–01 (1903).[2]  Ermekov demands an individualized bond hearing that would require the Government prove his dangerousness and flight risk.  The parties, however, disagree on the appropriate framework for evaluating his demand.  Ermekov advocates the *Mathews*[3] factors, under which the court must balance "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures."  *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews*, 424 U.S. at 334–35).  The Government counters that binding precedent forecloses any interest-balancing for aliens detained pending their removal proceedings.  Relying on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) and *Demore v. Kim*, 538 U.S. 510 (2003), the Government argues that, barring dilatory tactics, an alien's indiscriminate detention while removal proceedings are ongoing poses no constitutional problem.  Doc. 7 at 6.

*Demore* and *Banyee* both hold that it is constitutionally permissible to detain a criminal alien without a bond hearing under § 1226(c) while their removal proceedings

---

[2] To the extent the Government suggests that an alien has no more due process rights beyond what is statutorily provided, it overreads cases such as *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020), and strips the precedent of meaningful context.  Although the political branches enjoy nearly plenary authority to set the procedures for "determining whether an alien should be admitted" when "at the threshold of initial entry," *id.* at 107, 139, it has long been recognized that those who have crossed that threshold have greater constitutional protections.  *See Zadvydas v. Davis*, 533 U.S. 678, 693–94 (collecting cases).  I therefore reject what would be the Government's widest-reaching contention, which is that all aliens detained under § 1225(b)(2) can claim only those due process protections that have been statutorily provided.  For reasons I will discuss further, *infra*, Ermekov has greater due process protections than his counterparts who are initially arriving into the United States.

[3] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

remain ongoing.  As both cases recognized, the political branches have wide latitude in restricting some subclasses of aliens undergoing removal proceedings from receiving an individualized bond hearing.  *See, e.g.*, *Reno v. Flores*, 507 U.S. 292 (1993) (unaccompanied minors); *Carlson v. Landon*, 342 U.S. 524 (1952) (communists).  After all, "Congress regularly makes rules as to aliens that would be unacceptable if applied to citizens."  *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The Government seeks to expand the foregoing logic to an even broader class of aliens: all those who unlawfully entered the United States.  *See* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as all aliens who unlawfully entered the country); *Avila*, 2026 WL 819258, at *3 (all applicants for admission are properly detained under § 1225(b)(2), which does not confer a statutory right to a bond proceeding).  The broad language in *Demore* and *Banyee* seemingly support its objective.  *See Demore*, 538 U.S. at 523 ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *Banyee*, 115 F.4th at 931 ("The rule has been clear for decades: detention during deportation proceedings is constitutionally valid." (cleaned up)); *Banyee*, 115 F.4th at 933 ("[*Zadvydas*] and [*Demore*] leave no room for a multi-factor 'reasonableness' test.").

Ermekov asks that these precedents be read in context.  *Demore* justified its holding in part on congressional findings that criminal aliens had a high rate of recidivism and abscondence.  *Demore*, 538 U.S. at 518–19.  *Banyee* simply reaffirmed that the span of a removal proceeding did not change the due process dimension of the alien's detention.  *Banyee*, 115 F.4th 934.  Similarly, *Carlson* rested on congressional findings that communists were categorically a "menace to the security of the United States," and even then, the majority pointed out that "[t]here is no evidence or contention that all persons arrested as deportable . . . for Communist membership are denied bail."  *Carlson*, 342 U.S. at 541–42.  *Reno* was a facial challenge in which the unaccompanied minors had an opportunity to request a bond redetermination hearing.  *Reno*, 507 U.S.

4

at 308–09.[4]  In sum, Ermekov argues, the broad language that the courts have used in upholding civil detentions without individualized findings is limited by the circumstances of each case and does not support the Government's position here.  As there are no attending congressional findings to justify mandatory detention for all aliens who are applicants for admission, it falls back on the courts to perform the necessary balancing.

*Mathews* was never intended as "an all-embracing test for deciding due process claims."  *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).  Indeed, in the immigration-detention context, it has not been the lead framework for measuring what process is due.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) (Bumatay, J., concurring) (citing *Demore*, 538 U.S. at 521–31; *Reno*, 507 U.S. at 299–315)); *but see Landon*, 459 U.S. at 35 (applying the *Mathews* test for determining whether a returning resident-alien was entitled to a deportation hearing).  Instead, the Court generally recognizes a spectrum of protections to aliens "depending upon status and circumstance," *Zadvydas*, 533 U.S. at 694 (citing *Landon*, 459 U.S. at 32–34); in which status and circumstance is generalized to the class an alien finds themselves within.  *See, e.g.*, *Landon*, 459 U.S. at 35 (re-entry of permanent resident aliens); *Zadvydas*, 533 U.S. at 690 (aliens found to be removeable but who remain detained).  I adopt that framework—an examination of Ermekov's status and circumstances for the class of aliens he is in—for this case.[5]

---

[4] In fact, *Reno* appears to rely on each juvenile's opportunity for a bond redetermination hearing in rejecting the procedural due process challenge.  *Reno*, 507 U.S. at 309 ("At least insofar as this facial challenge is concerned, due process is satisfied by giving the detained alien juveniles the *right* to a hearing before an immigration judge.").

[5] Some courts disagree.  *See, e.g.*, *U.H.A. v. Bondi*, ___ F. Supp. 3d ___, 2026 WL 558824, at *13–15 (D. Minn. Feb. 27, 2026); *Zafra v. Noem*, No. 25-cv-541, 2025 WL 3239526, at *4 (W.D. Tex. Nov. 20, 2025).  The proper framework for evaluating Ermekov's claim is not well-settled.  If *Mathews* is determined to be the appropriate test, I would find that Ermekov's individual circumstances would warrant a bond hearing.

Regarding the class of aliens held under § 1225(b)(2) who have previously affected entry and have remained in the United States for a significant period of time, I find no constitutional right to a bond hearing during the pendency of removal proceedings. Despite this group having some enhanced due process protections because they have gained a foothold in the United States, the political branches' power remains potent. Courts have approved of civil detentions for aliens "pending the inquiry into [the alien's] true character, and while arrangements were being made for their deportation." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896); *accord Jennings*, 583 U.S. 286 ("Congress has authorized immigration officials to detain some classes of aliens during . . . certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). This justification translates to this class of aliens who, even though many have been in the United States for decades without incident, the Government may still wish to detain as their removal proceedings are ongoing. The constitutional procedure that this class of aliens is due is the removal proceeding itself. *See Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-50 (1950) (recognizing a constitutional need for a deportation hearing "at least for aliens who had not entered clandestinely and who had been here some time even if illegally"), *superseded by statute on other grounds as recognized in*, *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991). Congress might not have intended to sweep in so many people into its mandatory detention scheme.[6] In addition, past precedent approved

---

[6] *Avila* confirms that § 1225(b)(2) applies to a larger group of aliens than what past practice suggested, causing some to argue that the new formulation sweeps in many that Congress never intended to be bound to the mandatory detention provision. *See Avila*, 2026 WL 819258, at *8 (Erickson, J., dissenting) ("All three branches of government understood the IIRIRA to maintain the distinction between unadmitted noncitizens in the interior and those arriving at the border for detention purposes. Five presidential administrations . . . and most immigration judges interpreted § 1225 to apply only to those arriving at the border."); *Buenrostro-Mendez v. Bondi*,

of more measured Executive action.  Neither though, change what is the constitutional floor for due process protections.  Analogous to *Demore* and *Banyee*, aliens detained under the mandatory detention provision of § 1225(b)(2) who had nonetheless affected entry into the country are not constitutionally entitled to a bond hearing.  *Cf. Boubacar v. Blanche*, No. 26-cv-59, 2026 WL 972708, at 3 (D. Neb. Apr. 10, 2026) ("While *Avila* does not foreclose Boubacar's procedural due process claim, other Supreme Court and Eighth Circuit precedent does.").

### B.      *Those Voluntarily Released Before Their Re-Detention*

Ermekov alternatively contends that his previous release on bond places him in a different class of aliens with greater protections.  Doc. 1 at 4; Doc. 16 at 16-21.  He claims that ICE's past decision to voluntarily release him on recognizance conferred an independent liberty interest that he can fall back on.

The Government fails to respond to this point, relying entirely on its overarching argument that no alien detained under § 1225(b)(2) is entitled to a bond hearing.  But when the Government decides to release an individual on bond or recognizance, it "creates 'an implicit promise' . . . that their liberty 'will be revoked only if they fail to live up to the conditions of release.'"  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (cleaned up) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *see also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (due process clause applies "even when the liberty itself is a . . . creation of the State").

Aside from the minor traffic violation that tipped DHS to Ermekov's status, the Government offers nothing to suggest that Ermekov failed to abide by the conditions of

---

166 F.4th 494, 508 (5th Cir. 2026) (Douglas, J., dissenting) ("The Congress that passed IIRIRA would be surprised to learn it had also required the detention without bond of two million people. For almost thirty years there was no sign anyone thought it had done so, and nothing in the congressional record or the history of the statute's enforcement suggests that it did.").  I must, however, presume that the legislature says in the statute what it meant, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002), and am bound by *Avila* in construing the statute.

his release.  Instead, Ermekov appears to be enmeshed in a nationwide policy shift that is forcing a blanket detention scheme.  A change in administration, however, cannot justify the Government reneging on its past promise.  *See Dambreville v. Noem*, No. 25-cv-514, 2026 WL 602174 (S.D. Iowa Jan. 12, 2026).  "To revoke that promise arbitrarily—without process and with no allegation of changed circumstances or violation by Petitioner—is fundamentally unfair." *Betancourth v. Tate*, ___ F. Supp. 3d ___, 2026 WL 638482, at *3 (S.D. Tex. Mar. 6, 2026) (citing *Wolff*, 418 U.S. at 558).  To remedy this breach, Ermekov must be released and put in the same position he was in before his re-detention.

Of course, if the Government believes that Ermekov's circumstances have changed to warrant his re-detention under the terms of his previous release, it is entitled to pursue that outcome.  However, the Government must conform itself to the promises it made and justify the change based on Ermekov's individual circumstances.

## V.    *CONCLUSION*

For the reasons set forth herein:

1.    Ersultan Ermekov's petition (Doc. 1) for a writ of habeas corpus is **granted**.  Respondents are **ordered** to release Ermekov immediately, subject to those conditions (if any) with which he was required to comply immediately prior to his re-detention.

2.    If the Government wishes to again re-detain Ermekov pending his removal proceedings, it must provide Ermekov with sufficient notice and a hearing before an immigration judge.  At such a hearing, the Government will be required to prove by clear and convincing evidence that Ermekov poses a flight risk or danger to the community.

8

**IT IS SO ORDERED** this 17th day of April, 2026.

_____
Leonard T. Strand
United States District Judge

9